Opinion by OLIVER, C. J. In accordance with stipulation of counsel that the merchandise consists of pieces of vellum the same in all material respects as those the subject of Abstract 57385, the claim for free entry under paragraph 1736 was sustained.

**No. 57658.**—W. R. Zanes and Company v. United States, protests 78497–K, 78498–K, and 91966–K (Galveston).

MOLLISON, Judge: These three cases were consolidated for trial and disposition. Each of the protests is directed against the action of the collector of customs in refusing to allow drawback under the provisions of section 313 of the Tariff Act of 1930, as amended, upon the exportation of certain cutters, bits, etc., claimed to have been manufactured in the United States with the use of imported tungsten metal powder, or with domestic tungsten metal powder substituted therefor, in accordance with the provisions of subsection (b) of said section 313.

At an earlier hearing, the plaintiff established sufficient facts to show that the collector had pursued an incorrect method of charging the imported quantities of metal for drawback purposes. However, a *prima facie* case on drawback requires that the facts of importation (and/or substitution), manufacture, and exportation be established before this court, as well as the fact that all pertinent customs regulations have been complied with. *United States* v. *C. J. Holt & Co., Inc.*, 17 C. C. P. A. (Customs) 385, T. D. 43822. The cases were, therefore, restored to the docket to permit the parties to complete the record.

The facts of importation and/or substitution, manufacture, and exportation, as well as compliance with the applicable customs regulations, are not now in dispute, having been agreed to by counsel for the parties. In addition, it was stipulated by counsel for the parties that the amount of money disallowed by reason of the method used in liquidation and handling of applicable documents and to which the plaintiff is entitled to refund amounts to $81.54 in the case of protest 78497–K, to $954.53 in the case of protest 78498–K, and to $239.67 in the case of protest 91966–K.

Upon the entire record before us, therefore, the protest claims are sustained to the extent indicated above.

Judgment will issue accordingly.

**No. 57659.**—W. R. Zanes and Co. v. United States, protest 95706–K (Galveston).

Opinion by MOLLISON, J. It was stipulated that the record made in protests 78497–K, etc. (Abstract 57658), decided concurrently herewith, be incorporated as a part of the record in this case, and that the amount of money disallowed by reason of the method used in liquidation and handling of applicable documents, to which the plaintiff is entitled to refund, amounts to $2,118.09. On the record presented, the claim of the plaintiff was sustained.

**No. 57660.**—W. R. Zanes and Company v. United States, protest 103253–K (Galveston).

Opinion by MOLLISON, J. It was stipulated that the record made in protests

78497–K, etc. (Abstract 57658), decided concurrently herewith, be incorporated as a part of the record in this case, and that the amount of money disallowed by reason of the method used in liquidation and handling of applicable documents, to which the plaintiff is entitled to refund, amounts to $761.53. On the record presented, the claim of the plaintiff was sustained.

BEFORE THE SECOND DIVISION, DECEMBER 3, 1953

**No. 57661.**—Chase Brass & Copper Co. *v.* United States, protest 203265–K (New York).

Opinion by LAWRENCE, J. It appearing that the protest was not filed within the statutory period allowed by section 514, Tariff Act of 1930 (19 U. S. C. § 1514), the protest was dismissed.

**No. 57662.**—Freedman & Slater, Inc. *v.* United States, protest 141349–K (New York).

RAO, Judge: An importation of sulphite paper, in sheets 22 by 34 inches, was classified by the collector of customs at the port of New York as bond paper, and assessed with duty at the rate of 3 cents per pound and 15 per centum ad valorem pursuant to the provisions of paragraph 1407 (a) of the Tariff Act of 1930. A protest was duly filed against said classification and assessment, in which it was alleged that the merchandise in question is standard uncoated printing paper, dutiable at the rate of ⅙ cent per pound and 5 per centum ad valorem, as provided for in paragraph 1401 of said act, as modified by the trade agreement with Canada, 74 Treas. Dec. 235, T. D. 49752.

The pertinent provisions, insofar as here applicable, read as follows:

PAR. 1407. (a) Correspondence cards, writing, letter, note, drawing, and handmade paper, paper commonly or commercially known as handmade or machine handmade paper, japan paper and imitation japan paper by whatever name known, Bristol board of the kinds made on a Fourdrinier or a multicylinder machine, ledger, bond, record, tablet, typewriter, manifold, onionskin, and imitation onionskin paper, and paper similar to any of the foregoing, all the above weighing eight pounds or over per ream, 3 cents per pound and 15 per centum ad valorem; * * *

Paragraph 1401, as modified by the trade agreement with Canada, *supra*:

Uncoated papers commonly or commercially known as book paper, and all uncoated printing paper, not specially provided for, not including cover paper, ⅙¢ per lb. and 5% ad val.

At the trial, one witness was called to testify on behalf of the plaintiff, and two witnesses testified for the defendant. Their testimony is sharply in conflict, plaintiff's witness being of opinion that the involved paper is uncoated printing paper and not bond paper; defendant's witnesses being of a contrary opinion The issue, therefore, is primarily one of fact dependent solely upon the weight of the evidence.

For the plaintiff, William A. Sullivan, a buyer of paper for John B. Harris Co., the ultimate consignee herein, testified that his company is known in the trade as a coarse-paper merchant, that is, one which handles heavier papers, like wrapping paper or boards, as distinct from fine papers, such as bond and ledger papers. The witness had been employed by John B. Harris Co. for 30 years, and had been in the paper business for 38 years. In the course of those years he had bought paper both in the United States and in Europe, and had seen it